## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Robert Bloom, as Trustee of the
Robert A. Bloom Trust u/a/d
March 5, 2002,

      Plaintiff/Counter-Defendant,

v.                              Case No. 24-11207
                                     Honorable Jonathan J.C. Grey

SSI HOLDCO, LLC, a Michigan
limited liability company,

      Defendant/Counter-Plaintiff, and

CHAD FIETSAM,

      Defendant,

v.

ROBERT BLOOM,
      Third Party Counter-Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART FIETSAM'S MOTION TO DISMISS (ECF No. 14), DENYING BLOOM'S MOTION FOR LEAVE TO AMEND (ECF No. 20), AND DENYING BLOOM'S MOTION TO DISMISS COUNTERCLAIM (ECF No. 21)

This matter is before the Court on defendant Chad Fietsam's

motion to dismiss (ECF No. 14) and third party counter-defendant Robert

Bloom's motion to dismiss counterclaim. (ECF No. 20.) Robert Bloom originally filed this case on May 6, 2024 (ECF No. 1) and filed an amended complaint on June 28, 2024. (ECF No. 9.) SSI Holdco, LLC ("Holdco") filed a counterclaim against Robert Bloom, as Trustee of the Robert A. Bloom Trust u/a/d March 5, 2002 (the "trust"), and Robert Bloom individually (collectively "Bloom") on July 19, 2024. (ECF No. 13.)

## I.   Background

Holdco is a single purpose limited liability company which was established for the purpose of acquiring the stock of SSI Technology, Inc. (the "Company"), formerly owned by the trust. On April 10, 2024, Robert Bloom, as trustee of the trust, and Holdco entered into a Stock Purchase Agreement (the "SPA") memorializing Holdco's acquisition of the Company. (*See* ECF No. 9-3.)

The purchase price for the stock of the Company was $4,500,000.00, less the Closing Loan Amount of $353,972.91, for a total of $4,146,027.09 (the "Purchase Price"). Holdco executed a Secured Promissory Note on April 9, 2024 (the "Note") whereby it agreed to pay the Purchase Price for the stock of the Company in increments, with the first payment of $500,000.00 due on or before May 1, 2024. (*See* ECF No. 9-2.)

On May 6, 2024, Bloom filed a complaint against Holdco alleging that Holdco breached the terms of the Note by failing to make the required payment on May 1, 2024. (ECF No. 1.) Fietsam, as the authorized representative of Holdco, signed both the SPA and Note on its behalf. On June 28, 2024, Bloom filed a First Amended Complaint adding Fietsam as a defendant in his individual capacity and adding claims of fraud (Count II), fraudulent inducement (Count III), and bad faith promises (Count IV) against both Holdco and Fietsam. (*See* ECF No. 9.)

Specifically, Bloom alleges that Holdco was not adequately capitalized and was thus unable to meet its obligations under the SPA. (*Id.* at PageID.96–97 ¶ 20.) Bloom alleges that the solvency clause was a false and material statement. (*See id.* at PageID.99–100 ¶¶ 37–41.) The relevant portion of the solvency clause reads as follows:

> **(c) Solvency.** Immediately after giving effect to the transactions contemplated hereby, Buyer and the Company, shall be solvent and shall: (a) be able to pay its debts as they become due, including but not limited to amounts due under the Note; (b) own property that has a fair saleable value greater than the amounts required to pay its debts, including but not limited to amounts due under the Note; and (c) have adequate capital to carry on its business.

(ECF No. 9-3, PageID.115.)

Conversely, Holdco alleges that its payment obligations were excused as Bloom committed fraud in the sale of the company. (ECF No. 13, PageID.175–176.) Holdco alleges that representations made by Bloom including cash flow sheets, financial statements, and other documents were fraudulent and misrepresented the financial condition of the Company. (*Id.*)

Bloom argues that Holdco's claim is foreclosed by the independent investigation clause of the SPA which reads as follows:

> **(f) Independent Investigation**. Buyer has conducted its own independent investigation, review and analysis of the Company, and acknowledges that it has been provided with all requested access to the personnel, properties, assets, premises, books and records and other documents and data of Seller and the Company for such purpose. Buyer acknowledges and agrees that: (a) in making its decision to enter into this Agreement and to consummate the transactions contemplated hereby, Buyer has relied solely upon its own investigation and the express representations and warranties of Seller set forth in Section 3 of this Agreement (including related portions of the Schedules); and (b) none of Seller, the Company or any other Person has made any representation or warranty as to Seller, the Company or this Agreement, except as expressly set forth in Section 3 of this Agreement (including the related portions of the Schedules).

(ECF No. 9-3, PageID.115–116.) In its counterclaim, Holdco does not refer to any of the warranties set forth in Section 3 of the SPA or any

related portions of the schedules. The SPA also includes a merger clause. (ECF No. 9-3, PageID.121.)

## II.   Legal Standard and Applicable Law

The Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When assessing a motion to dismiss under Rule 12(b)(6), the Court must give the plaintiff the benefit of the doubt and accept all the complaint's factual allegations as true. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Additionally, when deciding whether to dismiss a case, the Court will typically only rely on the facts stated in the complaint. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citations omitted). However, a court may consider "exhibits attached to [a] defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Id.* at 680–681 (citations omitted).

Fraud claims are governed by Rule 9(b), which places a heightened pleading standard on the plaintiff. That rule requires that a plaintiff: (1)

specify the fraudulent statements, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain their fraudulent nature. *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2022). Essentially, the plaintiff must state the "who, what, when, where, and how" of the alleged fraud. *Id.* (citations omitted).

## III.   Analysis

As a threshold matter, courts apply the forum state's laws in suits based on diversity jurisdiction. *See Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, 17 F.4th 645, 648 (6th Cir. 2021). Here, Michigan law governs this diversity dispute because Michigan is the forum state. Additionally, the SPA included a choice of law clause specifying that Michigan law governs, and neither party alleges that any other state has an interest in this dispute.

### A. Fietsam's Motion to Dismiss (ECF No. 14)

#### 1.   Individual Liability

Bloom seeks to hold Fietsam personally liable for his alleged torts. (*See* ECF No. 9, PageID.103.) "Michigan law is well settled that a plaintiff may pursue an action against a corporate official in his personal capacity

when the plaintiff alleges that the official's own tortious conduct harmed the plaintiff." *Dep't of Agric. v. Appletree Mktg., L.L.C.*, 779 N.W.2d 237, 239 (Mich. 2010). This is the case "regardless of whether [the officer was] acting for their personal benefit or the corporation's benefit." *Id.* at 246. *See also Zaino v. N. Woodward Const. Co.*, 95 N.W.2d 33, 34–35 (Mich. 1959) (false statement); *Hempfling v. Burr*, 26 N.W. 496, 496 (Mich. 1886) (fraud).

Although some of the allegations in the amended complaint seem to gesture at a theory of piercing the corporate veil, it is not clear that Bloom is attempting to proceed on such a theory and neither party addresses it in their briefing. (*See* ECF No. 9, PageID.98 ¶ 26 ("Upon information and belief, Defendant Holdco is a mere instrumentality of Fietsam.")). "It is clear, however, that a corporate officer is personally liable for the tortious injury committed by him regardless of a piercing of the corporate veil." *In re Interstate Agency, Inc.*, 760 F.2d 121, 125 (6th Cir. 1985) (applying Michigan law). The Court finds that Fietsam can be found liable for torts he committed, even if those torts were committed on behalf of Holdco.

However, in terms of the breach of contract claim (Count I), Bloom does not allege that Fietsam is a party to the contract in his individual capacity, nor does Bloom identify Fietsam in Count I. Fietsam cannot be held liable individually if he solely signed on behalf of the corporation. *See Livonia Bldg. Materials Co. v. Harrison Const. Co.*, 742 N.W.2d 140, 145–146 (Mich. Ct. App. 2007); *Innovation Ventures, LLC v. Custom Nutrition Lab'ys, LLC*, 912 F.3d 316, 335–336 (6th Cir. 2018) (applying Michigan law); *Source One, USA, Inc. v. Challenge, Inc.*, No. 09-12375, 2009 WL 3464707 (E.D. Mich. Oct. 22, 2009). Although it is unclear that Bloom brought Count I against Fietsam individually, for the sake of clarity and the foregoing reasons, Count I is **DISMISSED** as to Fietsam individually.

### 2. Rule 9(b) Pleading Standard

The complaint sufficiently identifies the fraudulent statement at issue, namely, the solvency clause of the SPA. It also states where and when the statements were made and explains why the clause is allegedly fraudulent. Specifically, the complaint states that "Defendants per the SPA materially and falsely represented to Plaintiff that Defendant was solvent" and Bloom appended a copy of the SPA, which includes a

solvency clause, to the complaint. (*Id.* at PageID.99 ¶ 37.) However, Fietsam argues that Bloom has failed to allege fraud with particularity because the complaint fails to specify which of his statements were made as an individual and which were made on behalf of Holdco. (ECF No. 14, PageID.199.)

Fietsam makes much of the fact that Bloom does not specify which defendant made the representation, instead referring to Fietsam and Holdco collectively. However, in this case, this is a distinction without difference. It is true that "[a] complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient" for the purposes of Rule 9(b). *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). For that reason, courts dismiss complaints raising claims of fraud which lump defendants together such that it is impossible to tell who is alleged to have made which statement.

However, the "three goals of Rule 9(b) [] are (1) to provide a defendant with fair notice of the claims against him; (2) to protect a defendant from harm to his reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits and

fishing expeditions." *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1114 (W.D. Mich. 1996).

The parties have not cited, and the Court is unaware of any case in which this specific circumstance has arisen under Rule 9(b), namely, a corporate entity's representative sued in his individual capacity and the corporation sued for that same individual's statements. In this case, Fietsam was the sole representative of Holdco and literally made the allegedly fraudulent representations. However, it is not clear if he was acting in his individual capacity or on behalf of Holdco at the time the representations were made.

Regardless, requiring additional clarification in the complaint does not further any of the goals of Rule 9(b), given the fact that as previously discussed, Fietsam may be held personally liable for his own torts under Michigan law. Fietsam has clear notice of the claims against him and Holdco. No additional harm to Fietsam's reputation will arise due to Bloom's failure to specify in which capacity Fietsam made each statement, particularly at this early stage of the litigation. Finally, there is no indication that this action is a fishing expedition.

Here, Fietsam himself is alleged to have committed the fraud underlying the complaint. Fietsam cannot avoid liability merely because he was acting in a dual capacity as an officer of Holdco. The Court finds that Bloom has sufficiently stated a cause of action against Fietsam individually to satisfy the requirements of Rule 9(b) and avoid dismissal.

### 3.    Economic Loss Doctrine

Fietsam's economic loss doctrine argument is not properly before the Court as Fietsam raised it for the first time on reply and it is not fully addressed in the briefing. *United States v. Pham*, 872 F.3d 799, 802 (6th Cir. 2017) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)) ("[A] party waives an argument made for the first time on reply."). For that reason, and given the procedural posture of this case, the Court declines to address the economic loss argument at this time. For the foregoing reasons, Fietsam's motion to dismiss (ECF No. 14) is **DENIED** as to all claims except Count I as to Fietsam individually.

### B. Bloom's Motion for Leave to Amend (ECF No. 20, PageID.236)

Bloom's motion for leave to amend was improperly raised as part of a response brief. *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) ("A request for leave to amend almost as an

aside . . . in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.") (citations and quotations omitted). As such, it is **DENIED**.

### C. Bloom's Motion to Dismiss Counterclaim (ECF No. 21)

#### 1.    Fraud in the inducement and silent fraud

Under Michigan law, Holdco must state the following elements to have a valid claim for fraud in the inducement: (1) Bloom made a material misrepresentation; (2) the misrepresentation was false; (3) Bloom knew the statement was false when made; (4) Bloom intended that Holdco act upon the statement; (5) Holdco actually acted upon the statement; and (6) Holdco suffered damages as a result. *Schwartz v. Elec. Data Sys, Inc.*, 913 F.2d 279, 285 (6th Cir. 1990); *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). An additional requirement for element five is that the plaintiff's reliance on the alleged misrepresentation must have been reasonable. *MacDonald v. Thomas M. Cooley L. Sch.*, 724 F.3d 654, 662–663 (6th Cir. 2013). Under Michigan law, a court may determine, based on the complaint, that a plaintiff's reliance was unreasonable. *Id.* at 664.

"Silent fraud is essentially the same [as fraudulent misrepresentation] except that it is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation." *Alfieri v. Bertorelli*, 813 N.W.2d 772, 775 (Mich. Ct. App. 2012). To make a case for silent fraud, Holdco must state that: (1) Bloom had a pre-existing legal or equitable duty to disclose; (2) Bloom suppressed the information with intent to defraud; (3) its reliance was reasonable; and (4) it suffered damage because of the suppression of the information. *Tocco v. Richman Greer Pro. Ass'n.*, 553 F. App'x 473, 476–477 (6th Cir. 2013) (applying Michigan law).

Bloom argues that Holdco's fraud in the inducement and silent fraud claims fail as a matter of law because Holdco's reliance on the representations was unreasonable as a matter of law. (ECF No. 21, PageID.268–272.) Bloom's reasonable reliance argument hinges on reference to the SPA's independent investigation clause. (*Id.*) Bloom separately argues that the fraud claims are barred by the SPA's merger and integration clause and the economic loss doctrine. (*Id.* at PageID.272–275.)

### i. Integration Clause

Bloom argues that by virtue of the SPA's integration and merger clause, it is fully integrated. (*Id.* at PageID.273–275.) The integration clause states that the SPA "constitutes the entire agreement among the parties and supersedes any prior understandings, agreements or representations by or among the parties, written or oral, that may have related in any way to the subject matter of this Agreement." (ECF No. 9-3, PageID.121.) The Court agrees that because of the integration clause, the SPA is fully integrated.

Therefore, evidence from outside the four corners of the purchase agreement is generally limited by the parol-evidence rule. *See UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 415 (Mich. Ct. App. 1998); *Coosard v. Tarrant*, 995 N.W.2d 877, 885 (Mich. Ct. App. 2022). However, the parol-evidence rule would not preclude evidence that a statement within the purchase agreement, or within the seller's disclosure statement that was referred to in the purchase agreement, was fraudulent. *Id.* Furthermore, extrinsic evidence may be introduced to show fraud sufficient to invalidate the contract entirely. *LIAC, Inc. v. Founders Ins. Co.*, 222 F. App'x 488, 492–495 (6th Cir. 2007). Claims of

intentional fraud "are [not] wiped away by simply including a merger clause in the final contract." *Id.* at 493 (quoting *Star Ins. Co. v. United Com. Ins. Agency, Inc.*, 392 F. Supp. 2d 927, 929 (E.D. Mich. 2005)). *See also Samuel D. Begola Servs., Inc. v. Wild Bros.*, 534 N.W.2d 217, 219 (Mich. Ct. App. 1995) (holding that "[f]raud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party").

Here, Holdco claims that Bloom committed fraud in the due diligence process by misrepresenting "available sales, cash, working capital and inventory" and failing to disclose to Holdco "material facts concerning the available sales, cash, working capital, and inventory of the Company prior to the closing date of the SPA." (ECF No. 13, PageID.177 ¶ 25; PageID.179 ¶ 36.) Holdco also alleges that it "justifiably relied" on such representations to its detriment. (ECF No. 13, PageID.177 ¶ 29.) This allegation is of such a kind that, if proven, could invalidate the SPA in its entirety. For that reason, Holdco's fraud claims are not barred by the integration clause.

## ii.  Independent Investigation Clause

"A plaintiff unreasonably relies on one of the defendant's statements if another of the defendant's statements contradicts it." *MacDonald,* 724 F.3d at 665. In *Novak*, the court found reliance objectively unreasonable where the plaintiff relied on an oral representation which was expressly contradicted by a written contract which contained a merger clause. *See Novak v. Nationwide Mut. Ins. Co.,* 599 N.W.2d 546, 553 (Mich. Ct. App. 1999).

However, "parties do not have 'an independent duty to investigate and corroborate representations' unless they were presented with some information or affirmative indication that further investigation was necessary." *Coosard*, 995 N.W.2d at 887. In *Coosard*, the court allowed a claim of fraud to proceed despite an "as is" clause and integration clause in the purchase of real property. *Id.*

Here, the SPA contained the explicit statement that

Buyer has conducted its own independent investigation, review and analysis of the Company, and acknowledges that it has been provided with all requested access to the personnel, properties, assets, premises, books and records and other documents and data of Seller and the Company for such purpose. Buyer acknowledges and agrees that: (a) in making its decision to enter into this Agreement and to consummate the transactions contemplated hereby, Buyer has relied solely upon its own investigation and the

16

express representations and warranties of Seller set forth in
Section 3 of this Agreement (including related portions of the
Schedules); and (b) none of Seller, the Company or any other Person
has made any representation or warranty as to Seller, the Company
or this Agreement, except as expressly set forth in Section 3 of this
Agreement (including the related portions of the Schedules).

(ECF No. 9-3, PageID.115.) Holdco alleges no violation of any of the

Section 3 warranties.

However, this situation is different from that in *Novak* as the

alleged misrepresentation (i.e., available sales, cash, working capital and

inventory) is not expressly contradicted by the term of the SPA. The SPA

makes no representation about the available cash, working capital, and

inventory of the company. Furthermore, there is no indication that

Holdco had any reason to believe further investigation was necessary. To

the contrary, Holdco alleges that Bloom intentionally misrepresented

aspects of the company's financial status during the due diligence process

which presumably hid any such warning signs. From the facts presented

and the arguments raised by the parties, the independent investigation

clause does not invalidate Holdco's claim as a matter of law at this early

stage of the litigation.

## 2.    Economic Loss Doctrine

Under Michigan law, the economic loss doctrine bars tort claims when "(1) the parties or others closely related to them had the opportunity to negotiate the terms of the sale of the good or product causing the injury, and (2) their economic expectations can be satisfied by contractual remedies." *Liberty Ins. Corp. v. LSP Prod. Grp., Inc.*, 582 F. Supp. 3d 496, 502 (E.D. Mich. 2022) (quotation marks omitted) (quoting *Quest Diagnostics, Inc. v. MCI WorldCom, Inc.*, 656 N.W.2d 858, 863 (Mich. Ct. App. 2002)). The economic loss doctrine provides that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only economic losses." *Neibarger v. Universal Coops., Inc.*, 486 N.W.2d 612, 615 (Mich. 1992) (citations and quotation marks omitted).

However, Michigan courts have recognized fraud in the inducement and silent fraud as exceptions to the economic loss doctrine when the misrepresentations would be grounds for invalidating the contract. *See JAC Holding Enters., Inc. v. Atrium Cap. Partners, LLC*, 997 F. Supp. 2d 710, 732 (E.D. Mich. 2014) (collecting cases); *Warren Prescriptions, Inc.*

*v. Walgreen Co.*, No. 17-10520, 2018 WL 287952 at *8 (E.D. Mich. Jan. 4, 2018). This case is the clear circumstance where the claims of fraud go to the creation of the contract in the first place and are extraneous to the terms of the contract. So, the economic loss doctrine does not bar this claim at the motion to dismiss stage.

Holdco has pleaded enough to maintain that its fraud claims are not simply claims arising from nonperformance of the SPA, and that the fraud they allege is distinguishable from the terms of the contract. Consequently, Bloom's motion to dismiss the counterclaim is **DENIED**.

### 3.   Declaratory Judgement

Bloom argues that the declaratory judgment claim must be dismissed as it is improperly pled, and Holdco waived any notice requirement. Given the lack of authority cited by Bloom, undeveloped argumentation, and the procedural posture of this case, the Court **DENIES** the motion to dismiss the declaratory judgment claim (Count III of the Counterclaim).

## IV.   Conclusion

Accordingly, **IT IS ORDERED** that Fietsam's motion to dismiss (ECF No. 14) is **GRANTED IN PART AND DENIED IN PART**;

19

**IT IS FURTHER ORDERED** that Count I of the Complaint is **DISMISSED** as to Fietsam individually;

**IT IS FURTHER ORDERED** that Bloom's motion to amend (ECF No. 20, PageID.236) is **DENIED**;

**IT IS FURTHER ORDERED** that Bloom's motion to dismiss counterclaim (ECF No. 22) is **DENIED**;

**SO ORDERED.**


<u>s/Jonathan J.C. Grey</u>
Hon. Jonathan J.C. Grey

Date: March 26, 2025            United States District Judge

20

## **<u>Certificate of Service</u>**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 26, 2025.

**<u>s/ S. Osorio</u>**
Sandra Osorio
Case Manager
